CARR, J.
It is objected by the appel *376 lant’s counsel, that the plaintiffs were improperly joined in the bill; for, supposing the slaves to have been the property of Richard Davis, Smithson, his son and heir, would, according to the law of that day have succeeded to them alone; the other children having nothing more than a claim on him for their distributive portions of the appraised value. That this is a correct statement of the law, is certain ; and I will not say what might have been 'the effect of this objection, if properly pleaded: but in' the present situation and stage of the cause, I think it can have no other effect than this, that the court will consider the right, if there be any, as vested in Smithson, and bound by his acts or omissions. It was also objected that the deposition of James Higginbotham could not be read, there being no proper order.of court for taking it, and no certificate of magistrates that it was sworn to, and it being altogether written by the attorney for the plaintiffs, before the arrival of the justices, or any person representing the defendants. If these objections had been taken in the *court below, by exception, they would unquestionably have been fatal, unless the plaintiffs could have removed them by evidence. But as it is, I do not think the first two can be looked into here. The facts, that the deposition was written by the plaintiffs’ attorney, and the parts of it most material for his clients, before the arrival of the magistrates, or of the opposite parties or their agent, do appear on the record; and though it would be too harsh, at this late stage of the controversy, when the witness is probably dead, to exclude the deposition, yet, I think, these circumstances cannot but materially affect its credit. And taking this deposition with its credit' thus impaired, and comparing it with the other proofs in the cause, the clear deduction from the whole is, that if Richard Davis was (and it appears he was) in possession of this slave during his lifetime, he held that possession under a loan from his inother-in-law, Mrs. Morrison; and that the slave Buey was for the first time appointed to her daughter Tirzah, by the general deed appointing fhe slaves of the testator William Morrison to his children, executed in pursuance of his will, by Mrs. Morrison and his surviving executor, in 1796, when the appointee Tirzah was the wife of Stewart, to whom accordinglj' the property was delivered; and, therefore, the slave Lucy and her increase do not pertain to Davis’s estate, but belonged to Stewart. [Here the judge entered into a critical examination of the evidence.] And if this question of fact were more doubtful than J think it is, there is yet a consideration, which would repel the claim of the appellee Smithson Davis (to whom alone, if the property belonged to his father’s estate, the right descended) so far as he seeks to disturb the mortgage to Dickenson. It is in proof, that when Dick-enson was solicited to make advances to Stewart, and take a mortgage of these slaves for his security, he took the precaution, before he would venture, to apply to Smithson Davis, and to ask him whether he had any claim to the property, telling him his reason for making the inquiry; and Davis answered, that he understood he had none. He stood *by, then, and saw Dickenson’s advances made to Stewart, and the mortgage taken ; and then brought suit. He said, indeed, in relating the fact of this disclaimer, that at the time he so informed Dickenson, he supposed he had no title. But he did not pretend that he was then ignorant of the facts upon which the claim he now sets up rested; and there are circumstances in proof [the judge stated and examined them] which evince, that he was, most probably, fully apprised of them. He could not be allowed to disturb a security which he himr self induced Dickenson to accept and trust to: his rights, if he had any, would be postponed to those of Dickenson: this is a settled point; Stewart v. Luddington, 1 Rand. 407, and the cases there cited, and Lang v. Lee, 3 Id. 410. This, however, is a secondary consideration : the ground on which this court decides the cause, is, that the slaves in question were never the property of Davis, the father, and consequently, the appellees have no title.
The other judges concurred in this opinion, and directed a decree to be entered, reversing the chancellor’s decree, and dismissing the bill.
Johnson asked, whether the court intended to reverse, or could regularly reverse so much of the decree as affected Stewart and wife, who had not appealed ‘ from it? He referred to Tate v. Liggat &c., ante, 84, 108.
Wickham said, the decree against Stewart and wife affected the rights of the appellant Dickenson : for he was the mortgagee of the slaves held by Stewart, as well as mortgagee and vendee of those held by himself.
BROOKE, P.
The court considers the whole cause before it, upon Dickenson’s appeal.